UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY THREATT #182625,

        Plaintiff,

v.                                                              Case No. 2:05-cv-97
                                                                HON. GORDON J. QUIST
TERRI ARREDIA, et al.,

        Defendants.

_____/

### REPORT AND RECOMMENDATION

      Plaintiff Anthony Threatt, an inmate currently confined at the Standish Maximum

Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several

employees of the Michigan Department of Corrections (MDOC).  Specifically, defendants include

Case Manager Terri Arredia, Warden Luoma, Deputy Warden Darlene Edlund, Assistant Deputy

Warden William Luetzow, Resident Unit Manager Daniel Lesatz, Inspector Ezrow, Corrections

Officer John VanAbel, Corrections Officer Unknown Jacobson, and Grievance Coordinator Beth

Smith.  Plaintiff claims that Defendants violated his rights under the First, Eighth and Fourteenth

Amendments.  For relief, Plaintiff requests damages.

      Plaintiff alleges that the security camera did not show the inside of the cell that he was

placed in on October 31, 2004.  Plaintiff asserts that this was a security risk and that staff failed to

correct this problem.  Plaintiff alleges that Warden Luoma, Darlene K. Edlund, William Luetzow,

Daniel Lesatz, Terri Arredia and other staff members were deliberately indifferent to plaintiff's

safety and health by not changing the location of the security camera.  Plaintiff also alleges that

grievance coordinators Smith and Tollefson refused to provide grievance forms in retaliation for a grievance he had filed on the grievance coordinator for failing to process a mail room complaint grievance.

Plaintiff alleges that on November 3, 2004, Arredia denied authorization to send out legal mail involving a motion filed in state court. Plaintiff alleges that defendant VanAbel refused to give plaintiff a lunch tray on March 30, 2005, and refused to give plaintiff breakfast and lunch trays on March 31, 2005, and April 1, 2005.  Plaintiff asserts that on April 1, 2005, defendant VanAbel wrote a false misconduct ticket to conceal these actions.  On April 4 and 7, 2005, defendant VanAbel allegedly again refused to give plaintiff a lunch tray.  VanAbel allegedly filed a false misconduct charge against plaintiff to cover up his improper actions.  Plaintiff alleges that VanAbel refused to serve him breakfast and lunch trays on April 8 and falsified his report stating that plaintiff had refused to be served.  Defendant Jacobson allegedly told plaintiff that he "was on the program." Plaintiff alleges that defendant Lesatz called him a snitch which placed plaintiff's life in danger. Plaintiff alleges that defendant Lesatz refused to release plaintiff into the general population after writing plaintiff a misconduct ticket for threatening behavior.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is

a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).  Defendants did not attach affidavits or exhibits to their motion, but have merely asserted that plaintiff cannot support his claims.

Defendants VanAbel and Johnson concede that food is a basic necessity but assert that plaintiff failed to establish his claim that he was denied food.  Plaintiff has alleged that he was denied food and has attached affidavits to his complaint supporting his claims.  In the opinion of the undersigned, a genuine issue of material fact exists on this claim.

Defendant VanAbel asserts that he is entitled to summary judgment on plaintiff's retaliation claims.  Defendant VanAbel wrote misconduct tickets on plaintiff for threatening behavior.  Plaintiff alleges that these were simply written as a cover up for the denial of his food trays.  There does not exist much of a factual record regarding the misconduct tickets.  Plaintiff attached some copies of the misconduct tickets to his complaint.  Defendant VanAbel has asserted

that plaintiff has not shown that he engaged in protected conduct.  Furthermore, defendant VanAbel asserts there is no showing by plaintiff that defendant intended to retaliate against plaintiff.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  Plaintiff has not shown that he engaged in protected conduct.  Plaintiff alleged in his complaint that the misconduct tickets were issued to cover up the fact that he was refused meal trays.  There was no allegation of plaintiff engaging in protected conduct.  If plaintiff is correct, and the misconduct tickets were issued to cover up the denial of meal trays, that allegation does not support a retaliation claim.  Plaintiff has made vague claims in his response brief that he threatened to file a grievance on VanAbel.  However, there exists no factual support or any allegation regarding the timing of these alleged threats.  In the opinion of the undersigned, plaintiff's retaliation claims should be dismissed.

Similarly, the claims against defendants Luoma, Edlund, Luetzow and Ezrow should be dismissed.  Defendants assert that they are entitled to qualified immunity because there exists no clearly established law that provides a right to have a security camera directed toward a prisoner's cell, or liability based upon supervisory status.  Government officials, performing discretionary

functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.  *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits.  *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent.  *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely disputed questions of material fact.  *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding."  *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours

of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990) (a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). There exists no constitutional right for a prisoner to have a security camera directed toward or inside a prisoner's cell. Therefore, defendants are entitled to qualified immunity.

Similarly, defendants cannot be liable absent a showing of personal involvement. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).   Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*.  *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325.  A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Plaintiff alleges that defendant Arredia denied him access to the courts when she denied disbursements for his legal mail.  It is well established that prisoners have a constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1, 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, *1-2 (6th Cir. Nov. 12, 1997).  Plaintiff has failed to show any actual injury.  Plaintiff has not established that a pending case was dismissed or that defendant Arredia caused plaintiff to lose a right to file a particular cause of action.

- 8 -

Plaintiff alleges that defendant Lesatz stated that plaintiff was a snitch in front of other prisoners. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir.1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

Various courts have held that prison officials who identify an inmate as a snitch to other inmates, with intent to provoke an assault or the fear of assault, may be held liable for an Eighth Amendment violation. *See Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) (reversing district court's dismissal of inmate's claim that guard told other inmates that plaintiff was a snitch which allegedly resulted in the plaintiff's beating); *Hobbs v. Lockhart*, 924 F.2d 774, 775 (8th Cir. 1991) (liability established for assaults on inmate because of guard's labeling inmate as an informant); *Miller v. Leathers*, 913 F.2d 1085, 1088 ("It is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch.'"); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir. 1989) (reversing district court's entry of summary judgment for defendants where plaintiff was called a snitch in front of other inmates by correctional officers); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984) (reversing district's court's dismissal as frivolous of

prisoner's claim alleging that "prison officials have labeled him a snitch and are exposing him to inmate retaliation, perhaps because of his conduct in bringing prior lawsuits").  But see *Blizzard v. Hastings*, 886 F.Supp 405, 410 (D. Del. 1995) (Officer's entitled to summary judgment where inmate cannot show that spreading rumor that inmate is a snitch exposed him to an unreasonable risk of serious harm).  There the court explained that the plaintiff must set forth facts which establish that the defendant acted with deliberate indifference to subject the plaintiff to an unreasonable risk of serious harm.  The court stated:

> Blizzard argues in his response to defendants' motion that his health, safety, and life have been placed in danger, apparently because of Officer Hastings' conduct.  However, in the ten sworn affidavits attached to Blizzard's brief in response to defendants' motion, the only fact the court can find to support this assertion is the following: "as a result of Hastings' statements, plaintiff had numerous repeated confrontations and altercations with inmates."  The court finds Blizzard has failed to allege facts sufficient to allow a reasonable jury to conclude that Officer Hastings, with deliberated indifference, exposed him to an unreasonable risk of serious harm.  Consequently, the court will grant a summary judgment in favor of defendants and against the plaintiff on this claim in plaintiff's complaint.

*Id*. at 410.   There is very little factual record on this claim.  Plaintiff simply asserts that defendant Lesatz told plaintiff that he misspelled another prisoner's name.  As a result, plaintiff asserted that he has been called a snitch or rat by other prisoners.  In the opinion of the undersigned, plaintiff has failed to set forth sufficient facts to show that defendant Lesatz acted with deliberate indifference exposing plaintiff to an unreasonable risk of serious harm.

Plaintiff alleges that defendant Smith denied him a Step II grievance appeal because he was on modified access to the grievance system.  Plaintiff apparently wanted to challenge his modified access status.  Plaintiff claims that his due process rights were violated because he could not exhaust his grievances necessary to file a civil rights action.  Plaintiff misunderstands the

exhaustion requirement.  A prisoner must exhaust all available grievances.  If plaintiff truly was denied a grievance request while on modified access status, he would have exhausted all available grievance procedures.  The denial of a grievance form, could not under these circumstances, deny plaintiff due process or access to the courts.

Plaintiff filed a motion to "reframe [sic] defendants and there [sic] co-workers and family members from retaliating against plaintiff."  Plaintiff alleges retaliation and harassment. Plaintiff wants to be transferred to a lower security level and therefore requests injunctive relief. Plaintiff also filed a letter motion for a transfer.   I have reviewed plaintiff's request for injunctive relief and conclude that the request lacks merit on the grounds presented as it fails to establish a substantial likelihood of success on the merits and does not establish that plaintiff will suffer irreparable harm if the requested relief is not granted.  Therefore, I recommend that plaintiff's request for a temporary restraining order be denied.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987).  In exercising that discretion, the court must consider and balance four factors:

> 1.  Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
>
> 2.  Whether the movant has shown irreparable injury.
>
> 3.  Whether the preliminary injunction could harm third parties.
>
> 4.   Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994).  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers.  *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984).  *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979).  It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.  *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969).  *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action.  *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989).  A review of the materials of record fails to establish a substantial likelihood of success with respect to plaintiff's claim that the defendants have violated his federal rights.  Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction.  Any interference by the federal courts in the administration of state prison matters is necessarily disruptive.  The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.  *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).  That showing has not been made here.

Accordingly, it is recommended that plaintiff's motion for summary judgment (Docket #198) be denied and defendants' motion for summary judgment (Docket #195) be granted in part, dismissing all plaintiff's claims except his Eighth Amendment claim for denial of food against defendants VanAbel and Jacobson.  It is further recommended that plaintiff's motion for injunctive relief (Docket #168), motion concerning plaintiff's life and health (Docket #137), motion for default judgment (Docket #144), and motion for a retaliatory transfer and to destroy evidence (Docket #148)  be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   August 27, 2008